UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NOAH DOHERTY and LYNN LEANDRE, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>RAMAPO MANOR NURSING CENTER, INC., and CARERITE CENTERS, LLC,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Noah Doherty ("Doherty") and Lynn Leandre ("Leandre") (collectively, "Plaintiffs"), on behalf of themselves and all other similarly situated persons, by and through their undersigned counsel, allege upon personal knowledge as to themselves and upon information and belief as to other matters (which is based on, among other things, their experiences at Defendants' facility, review of Defendants' records, conversations with Defendants' employees, and investigation of their counsel), as follows:

## NATURE OF ACTION

1. Plaintiffs bring this action on behalf of themselves and all other similarly situated current and former hourly paid non-exempt employees ("Hourly Employees") of Defendants Ramapo Manor Nursing Center, Inc. ("Ramapo Manor") and CareRite Centers, LLC ("CareRite") (collectively, "Defendants") seeking redress for Defendants' systematic failure to compensate Plaintiffs and Hourly Employees for all hours worked.

2. More specifically, Plaintiffs bring this action on behalf of themselves and the Hourly Employees who performed work for Defendants at one or more of the following facilities: The Chateau at Brooklyn Rehabilitation and Nursing Center, The Monarch at Brooklyn

Rehabilitation and Nursing Center, The Phoenix Rehabilitation and Nursing Center, Luxor at Mills Pond Rehabilitation and Nursing Center, Luxor at Sayville Rehabilitation and Nursing Center, St. James Rehabilitation & Healthcare Center, The Hamlet Rehabilitation and Healthcare Center at Nesconset, Water's Edge Rehab and Nursing Center at Port Jefferson, The Grand Pavilion for Rehabilitation and Nursing at Rockville Centre, Glengariff Rehabilitation and Healthcare Center, The Riverside Rehabilitation & Healing Center, the Willows at Ramapo Rehabilitation and Nursing Center, Cortland Healthcare, The Emerald Peek Rehabilitation and Nursing Center, The Enclave at Rye Rehabilitation and Nursing Center, The Grove at Valhalla Rehabilitation and Nursing Center, The Paramount at Somers Rehabilitation and Nursing Center, and Sans Souci Rehabilitation and Nursing Center (collectively, the "Facilities").

3. CareRite owns, operates, and manages nursing home and rehabilitation facilities throughout New York, New Jersey, Tennessee, and Florida, including each of the Facilities. CareRite employs more than 1,000 Hourly Employees at their facilities, including, among others, nurses, aides, nursing aid trainees, and certified nursing assistants. By virtue of their management and control over the wages and work of Plaintiffs and the Hourly Employees, Defendants are "employers" under applicable labor law, and operate the Facilities as joint employers and/or a single integrated enterprise.

4. As particularized below, Defendants have engaged in illegal and improper wage practices and policies that have deprived Hourly Employees of millions of dollars in wages and overtime compensation. These practices include: (a) improperly penalizing Hourly Employees by configuring the time clocks in Defendants' facilities to round down and artificially reduce the amount of time Hourly Employees are credited with performing work; and (b) automatically deducting time for meal breaks when Hourly Employees are performing work during that time.

These illegal practices and policies are uniform throughout Defendants' facilities and have been known to Defendants for years.

5. Furthermore, Defendants failed to provide Plaintiffs and Hourly Employees with appropriate and accurate pay rate acknowledgement forms and weekly wage statements. As a result, Plaintiffs and the Hourly Employees were prejudiced and harmed in their ability to ascertain whether they were, in fact, compensated for all hours worked and at the appropriate rate of pay, resulting in Plaintiffs and Hourly Employees being undercompensated by Defendants.

6. For these reasons, Plaintiffs brings this action on behalf of themselves and other Hourly Employees to recover unpaid wages, overtime compensation, damages, penalties and reasonable attorneys' fees and costs under the Fair Labor Standards Act (the "FLSA") §§ 201, *et seq.*, and under McKinney's Labor Law (the "NYLL"), §§ 190, *et seq.*, 195(1), 195(3), §§ 650, *et seq.*, and 12 NYCRR § 142-2.2.

## JURISDICTION AND VENUE

7. This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 because the action involves a federal statute, the FLSA, 29 U.S.C. § 216(b).

8. This Court has original jurisdiction over all claims in this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d). This is a proposed class action in which: (a) there are 100 or more members in the proposed class; (b) at least some members of the proposed class have a different citizenship from the Defendants; and (c) the claims of the proposed class members exceed $5,000,000.00 in the aggregate.

9. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over the NYLL state law wage and hour claims because those claims derive from a common nucleus of operative fact.

10. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(1) because a substantial part of the events giving rise to the claims asserted herein occurred in this judicial district.

## THE PARTIES

### Plaintiffs

11. Doherty is a resident of Stony Point, New York, and is a current Hourly Employee of Defendants. Doherty has been employed by Defendants at the Ramapo Manor facility as an Hourly Employee since on or about March 25, 2025, and is paid an hourly rate of $38.00 per hour.

12. Specifically, Doherty is employed by Defendants as a Licensed Practical Nurse (hereinafter "LPN"). Doherty's job duties as an LPN include, among other duties, delivering direct healthcare services to patients at Ramapo Manor, such as administering medications, performing wound care, monitoring vital signs, managing intravenous (IV) therapies, supervising nursing aides, preparing patients for medical evaluations, and completing clinical documentation, including charting and recording medical tasks.

13. Doherty is scheduled to work from 3:30 p.m. until 11:30 p.m., and typically works 3-5 days per week. As such, on those weeks in which Doherty works 5 days, Doherty works at least 40 hours. By way of example, during the week of May 4, 2025 to May 10, 2025, Doherty worked in excess of 8 hours per day on each of May 4th, May 5th, May 7th, May 8th, and May 10th. However, Doherty did not receive compensation for all hours worked, including at the applicable overtime rate for those hours worked in excess of 40 hours.

14. Doherty, like all other Hourly Employees, is required to record his time for each shift using a biometric time clock. To this end, Doherty is required to clock in upon arrival at the Ramapo Manor facility and is required to clock out upon departure from the facility. Doherty does

not clock in and out for meal breaks, although his scheduled hours include an automatically deducted meal break of 30 minutes per day.

15. Doherty regularly clocks in before the start of his scheduled shift and immediately begins performing his essential job functions, and similarly regularly works past the end of his scheduled shift performing his essential job functions. Defendants' timekeeping system, however, rounds Doherty's time punches in such a manner that artificially reduces the amount of time Doherty is credited with having worked.

16. For example, during the week of May 4, 2025 to May 10, 2025, Doherty clocked in before the start of his scheduled shift and/or after the end of his scheduled shift every single day during this week, but was undercompensated as a result of Defendants' unlawful time rounding practices. Below is a chart reflecting Doherty's daily time punches and the daily rounded hours as recorded in Defendant's timekeeping system:

| **Date** | **In Punch** | **Out Punch** | **Rounded Total Amount** | **Actual Total Amount** |
|---|---|---|---|---|
| 5/4/25 | 3:20PM | 11:54PM | 8.00 | 8 hours 34 minutes |
| 5/5/25 | 3:19PM | 11:39PM | 7.50 | 8 hours 20 minutes |
| 5/7/25 | 3:19PM | 11:33PM | 7.50 | 8 hours 16 minutes |
| 5/8/25 | 3:19PM | 11:52PM | 8.00 | 8 hours 33 minutes |
| 5/10/25 | 3:19PM | 11:54PM | 8.00 | 8 hours 35 minutes |

17. Thus, during this week, Doherty worked on the clock for a total of 42 hours and 18 minutes. However, he was only compensated for working a total of 39 hours. Additionally, Doherty did not receive any overtime compensation for the 2 hours and 18 minutes he worked above 40 hours during this week. The foregoing does not include the additional time he spent working during his meal breaks, which as further discussed below, occurred nearly every single day throughout his employment.

18. On numerous other occasions throughout his employment, Doherty clocked in

before the start of his scheduled shift and/or after the end of his scheduled shift, but was undercompensated as a result of Defendants' unlawful time rounding practices.

19. For example, on April 12, 2025, Doherty clocked in at 3:23PM and clocked out at 12:39AM. Despite being on-the-clock for 9 hours and 16 minutes, Doherty was only compensated for 9 hours. The next day (April 13, 2025), Doherty clocked in at 3:18PM and clocked out at 11:54PM, *i.e.*, he was on-the-clock for 8 hours and 36 minutes; however, he was only compensated for 8 hours and 30 minutes. On April 14, 2025, Doherty clocked in at 3:04PM and clocked out at 11:58PM, and despite being on-the-clock for 8 hours and 54 minutes, he was only paid for 8 hours and 30 minutes. On April 15, 2025, Doherty clocked in at 3:20PM and clocked out at 11:58PM, but was only paid for 8 hours rather than the 8 hours and 8 minutes he was on-the-clock. On April 17, 2025, Doherty was on-the-clock for exactly 8 hours and paid for 8 hours. Therefore, during this week, Doherty worked on-the-clock for a total of 42 hours and 54 minutes, but was only paid a total of 41 hours, and he did not receive overtime for the hours worked in excess of 40.

20. By way of further example, on April 28, 2025, Doherty clocked in at 3:19PM and clocked out at 11:42PM. He was therefore on-the-clock for 8 hours and 3 minutes. However, he was only compensated for 7 hours and 30 minutes. Similarly, on May 3, 2025, Doherty clocked in at 3:19PM and clocked out at 12:00AM. Despite being on-the-clock for 8 hours and 41 minutes, he was only compensated for 8 hours. On May 4, 2025, Doherty clocked in at 3:20PM and clocked out at 11:54PM. Once again, despite being on-the-clock for 7 hours and 50 minutes, he was only compensated for 7 hours and 30 minutes. On May 7, 2025, Doherty clocked in at 3:19PM and clocked out at 11:33PM, and was only compensated for 7 hours and 30 minutes. On May 8, 2025, Doherty clocked in at 3:19PM and clocked out at 11:52PM, but was only paid for 8 hours, and on May 1, 2025, Doherty clocked in at 3:19PM and clocked out at 11:54PM, but was only paid for 8

hours.

21. The foregoing are just a few of the many instances during his employment in which Doherty worked but was not appropriately paid as a result of Defendants' time rounding practices and policies, which applied to all Hourly Employees at the various Facilities.

22. In addition to being undercompensated as a result of Defendants' time rounding practices, Doherty also routinely worked during all or portions of his uncompensated meal breaks but was not compensated for such time worked, including overtime at the applicable rate of one and one-half times his regular hourly rate. Indeed, nearly every single day throughout his employment, Doherty has worked during all or a portion of his uncompensated meal break.

23. As a result of Defendants' improper time-rounding practices and policies and automatic meal break deduction, nearly every single day throughout his employment, Doherty performed essential work for Defendants for which he was not compensated.

24. Doherty was engaged in essential and integral work on Defendants' behalf during these and all other pre- and post-shift time rounding periods in which he was clocked in but not compensated. Work performed during the pre- and post-shift rounding periods include some or all the job duties referenced *supra*. This pre- and post-shift work was significant, integral, and indispensable to the performance of Doherty's job duties, was not a *de minimis* task or request, and was predominantly for Defendants' benefit. Likewise, the work performed by Doherty during interrupted and uncompensated meal breaks includes those duties described *supra*.

25. As an LPN, Doherty cannot exercise independent discretion, judgment or control over the daily and overall operation of the areas in which he works. Doherty cannot hire or fire other Hourly Employees. Doherty also cannot pick and choose a particular job assignment during any given day, but rather is assigned particular job assignments by his supervisors. Despite this

lack of independent discretion, Doherty has not been properly compensated for all hours worked.

26. Doherty's supervisors, including Jinsee Matthews, have known he has been performing work during periods of improper pre- and post-shift time rounding and during uncompensated meal breaks, but have done nothing to rectify the situation or compensate Doherty for his time.

27. Leandre is a former Hourly Employee of Defendants. Specifically, Leandre was hired by Defendants on or about February 22, 2023 as a Nurse Supervisor at the Ramapo Manor facility. Despite holding the title of "Nurse Supervisor," Leandre was a non-exempt hourly employee and could not hire or fire employees, could not dictate the scheduled hours of employees, and could not set the rate of pay for employees. Leandre served as a Nurse Supervisor from approximately February 22, 2023 until May 2023, after which time she was promoted to Nurse Manager.

28. As a Nurse Supervisor, Leandre was responsible for, among other things, care planning, unit supervision, assisting LPNs, and otherwise providing healthcare services to patients at Ramapo Manor.

29. Throughout her employment as a Nurse Supervisor, Leandre was typically scheduled to work from 8:00 a.m. to 4:00 p.m., and often worked in excess of 40 hours per week. By way of example, during the week of April 9, 2023 to April 15, 2023, Plaintiff worked on-the-clock for 40 hours and 30 minutes. Leandre, however, did not receive compensation for all hours worked, including at the applicable overtime rate for those hours worked in excess of 40 hours.

30. Like all other Hourly Employees, Leandre was required to record her time for each shift using a biometric time clock. Leandre was required to clock in upon arrival at the Ramapo Manor facility and clock out upon departure. Leandre did not clock in and out for meal breaks,

although her scheduled hours included an automatically deducted meal break of 30 minutes per day.

31. Leandre regularly clocked in and out before the start of her shift and immediately began performing her essential job functions, and similarly regularly worked past the end of her scheduled shift performing her essential job functions. However, Defendants' timekeeping system rounded Leandre's time punches to reduce the amount of time Leandre was credited with having worked.

32. For example, during the week of April 9, 2023 to April 15, 2023, Leandre regularly clocked in before the start of her shift and clocked out after the end of her scheduled shift, but was not paid for all hours worked as a result of Defendants' timekeeping practices and policies.

33. Below is a chart reflecting Leandre's daily time punches and the daily rounded hours as recorded in Defendant's timekeeping system:

| Date | In Punch | Out Punch | Rounded Total Amount | Actual Total Amount |
|---|---|---|---|---|
| 4/10/23 | 7:38AM | 3:41PM | 7.75 | 8 hours 3 minutes |
| 4/11/23 | 8:08AM | 3:48PM | 7.50 | 7 hours 40 minutes |
| 4/12/23 | 7:32AM | 3:56PM | 8.00 | 8 hours 24 minutes |
| 4/13/23 | 7:54AM | 3:50PM | 7.25 | 7 hours 50 minutes |
| 4/14/23 | 7:55AM | 4:38PM | 8.00 | 8 hours 33 minutes |

34. Accordingly, during this week, Leandre worked 40 hours and 30 minutes, but was only compensated for 38 hours and 30 minutes. Leandre did not receive any overtime for the 30 minutes she worked above 40 hours during this week, and was otherwise shorted the remaining straight time she worked.

35. By way of further example, during the week of April 2, 2023 to April 8, 2023, Leandre worked on-the-clock for 44 hours and 2 minutes. However, as a result of Defendants' time rounding practices and policies, Leandre was not paid for all hours worked. Rather,

Defendants only paid Leandre for 42.50 hours, with 40 hours being paid at her regular hourly rate, and 2.50 hours paid at her overtime rate. As a result, Leandre is owed at least 1 hour and 32 minutes of unpaid overtime for this week.

36. Thus, although Defendants may have paid some overtime to some Hourly Employees, Defendants systematically failed to pay *all* overtime for all hours worked in excess of 40 hours in a week.

37. The foregoing are just a few of the many instances during her employment in which Leandre worked but was not appropriately paid as a result of Defendants' time rounding practices and policies, which applied to all Hourly Employees at the various Facilities.

38. Leandre was engaged in essential and integral work on Defendants' behalf during these and all other pre- and post-shift time rounding periods in which she was clocked in but not compensated. Work performed during the pre- and post-shift rounding periods include some or all the job duties referenced *supra*. This pre- and post-shift work was significant, integral, and indispensable to the performance of Leandre's job duties, was not a *de minimis* task or request, and was predominantly for Defendants' benefit.

39. In addition to being undercompensated as a result of Defendants' time rounding practices, Leandre also routinely worked during all or portions of her uncompensated meal breaks but was not compensated for such time worked, including overtime at the applicable rate of one and one-half times his regular hourly rate.

40. In fact, nearly every single day throughout her employment, Leandre worked during all or a portion of her uncompensated meal break. The work performed by Leandre during interrupted and uncompensated meal breaks includes those duties described *supra*.

41. As a Nurse Supervisor, Leandre could not independent discretion, judgment or

control over the daily and overall operation of the areas in which she worked. Leandre could not hire or fire other Hourly Employees and could not pick and choose a particular job assignment during any given day. Despite this lack of independent discretion, Leandre was not been properly compensated for all hours worked.

42. Other Hourly Employees—regardless of job title, duties, or responsibilities—are subject to the same timekeeping policies and practices, and were likewise required to track the hours they worked for Defendants through time clocks identical to those used by Plaintiffs. Just like Plaintiffs, other Hourly Employees were not compensated for all hours worked as a result of Defendants' improper timekeeping practices and policies.

43. In fact, Doherty previously worked out of Defendants' Cortland Manor facility prior to his current employment at the Ramapo Manor facility. While Doherty's employment at the Cortland Manor facility was through a staffing agency, Doherty was nevertheless subject to the same timekeeping practices and policies applicable to all other Employees at this facility, which are the same practices and policies applicable to Employees at the Ramapo Manor facility. Among other things, the time clock utilized at the Cortland Manor facility is the same time clock Doherty uses at the Ramapo Manor facility, and Doherty was required to record his time in and out each day just like he is required to do so at the Ramapo Manor facility.

44. Thus, because of Defendants' improper time-rounding, meal break, and overtime compensation policies, Plaintiffs have been deprived of wages as required by the FLSA and NYLL.

**Defendants**

45. CareRite is a limited liability company that operates rehabilitation and healthcare centers across the State of New York, including in Long Island, New York, Brooklyn, New York,

New York, New York, and Westchester, New York, as well as in New Jersey, Tennessee, and Florida. According to its website, CareRite specializes in providing rehabilitation, skilled nursing services, cardiac and pulmonary care, ventilator and wound care, amputee rehabilitation, and integrative therapies.

46. Ramapo is a for-profit corporation that serves as one of CareRite's nursing home facilities in Suffern, New York. Plaintiff is employed by Defendants at Ramapo Manor.

47. CareRite's website identifies Ramapo Manor as one of its affiliated facilities, also operating under the name "The Willows at Ramapo." According to records maintained by the New York State Department of State, Division of Corporations, "The Willows at Ramapo" is a registered assumed name of Ramapo Manor.

48. CareRite holds itself out to the public as an affiliated entity of Ramapo Manor and each of the Facilities. In fact, the CareRite website includes an interactive map identifying each of the various Facilities under its control, and advertises each of the Facilities using the same branding and logo as reflected below:




49. Throughout the relevant time period, Defendants have employed over 1,000 current

and former Hourly Employees.

50. The compensation policies of Defendants are centrally and collectively dictated, controlled, and ratified. As such, Defendants have the power to control wage policies and practices through their oversight of day-to-day operating procedures; control Hourly Employees' work schedules; determine Hourly Employees' rate of pay; hire and fire Hourly Employees; control record-keeping practices of Defendants' various facilities, including maintaining Hourly Employees' records.

51. CareRite exercises functional and operational control over each of the Facilities, all of which engage in the same activities and business objectives, and which share common owners, officers, directors, employees, and members. Thus, Defendants are the joint employers of Plaintiffs and class members within the meaning of the FLSA and NYLL and CareRite operated the Facilities as a single integrated enterprise.

## FACTUAL ALLEGATIONS

### Background

52. Defendants employed over 1,000 Hourly Employees at the various Facilities during the relevant period.

53. Defendants hired Plaintiffs and all other Hourly Employees with the promise of paying hourly wages for all hours worked. Hourly Employees are compensated based on their job description and tenure, with hourly rates ranging from minimum wage to approximately $60.00 per hour.

54. Hourly Employees are required to record the hours they work for Defendants by utilizing a time clock. Defendants' pay policies and practices are the same across all departments and all facilities, and the time-keeping systems used within each department are the same as to all

Hourly Employees within each department and are the same or substantially similar across all departments.

**Defendants' Time-keeping System is Configured to Improperly Penalize Hourly Employees When They Clock in Before the Start of their Scheduled Shifts and After the End of their Scheduled Shifts by Improperly Rounding Hourly Employees' Time Punches**

55. Defendants have a policy and practice of unlawfully penalizing Hourly Employees who clock in and perform work before their shifts are scheduled to begin and perform work after the end of their scheduled shift before they clock out. Specifically, Defendants' timekeeping system is configured to artificially reduce the amount of time Hourly Employees are credited with having worked by rounding their clock-in and clock-out time, even though they are performing job-related duties between when they have actually clocked in/out and when they are scheduled to work.

56. The work performed by Hourly Employees during these periods is at the request of Chiefs, Managers, Directors, and other superiors who know that Hourly Employees are not be paid for this time, but nonetheless instruct Hourly Employees to begin or complete tasks within the unpaid rounding window.

57. For example, if an Hourly Employee is scheduled to end his shift at 11:30 p.m., and he clocks out at 11:39 p.m., he is paid only until 11:30 p.m. even though he is performing work related duties during that uncompensated 9-minute interval. Similarly, if an Hourly Employee is scheduled to start his shift at 3:30 p.m. and his clocks in at 3:19 p.m., he is paid starting at 3:30 p.m. even though he is performing work-related duties during that uncompensated 9-minute interval.

58. Despite requesting and being aware of the work Hourly Employees perform during these penalty periods, Defendants have knowingly configured their time-keeping system to deny compensating Hourly Employees for some—if not all—of this unlawful rounding time spent on

Defendants' behalf by systematically rounding down the total time worked by Hourly Employees.

59. "Rounding" practices are permissible under the FLSA and NYLL if the "arrangement averages out so that the Hourly Employees are fully compensated for all the time they actually work." 29 C.F.R. § 785.48(b). This practice is accepted provided that the time rounding is used in such a manner that will not, over a period of time, result in the failure to compensate Hourly Employees properly for all the time they have actually worked. Defendants are aware of permissible rounding practices under the FLSA and NYLL. However, despite their knowledge of permissible rounding practices and knowing that its timekeeping software disproportionately works to the benefit of Defendants and to the detriment of Hourly Employees, Defendants have never conducted an analysis to determine whether Defendants' time clock system averages out – which it does not.

60. As such, Defendants' rounding practice unfairly favors Defendants versus the Hourly Employees subject to the policy, which consistently and artificially reduces the total time Hourly Employees are credited with working at Defendants' facilities.

**Defendants Exercise Control Over the Wage Policies and Practices of Hourly Employees at the Facilities, Operate the Facilities as an Integrated Enterprise, and are Joint Employers of the Hourly Employees**

61. CareRite operates the Facilities as single integrated enterprises and is a joint employer of the Hourly Employees with Ramapo Manor and each of the Facilities.

62. Defendants have the power to control their wage policies and practices through their oversight and management of day-to-day operating procedures, control over Hourly Employee work schedules, negotiation of employee collective bargaining agreements, ability to determine employees' rate of pay, and ability to control Defendants' record and timekeeping practices. For example, Defendants have negotiated contracts with their vendors regarding

purchases of facility-wide supplies and services.

63. CareRite holds itself out to the public as an affiliated entity of Ramapo Manor and the other Facilities. For instance, CareRite's corporate website expressly promotes Ramapo Manor, where Plaintiff was employed, as one of its affiliated centers. *See* https://careritecenters.com. Similarly, when a user selects the Instagram icon on Ramapo Manor's website, they are directed to CareRite's Instagram page, further reinforcing the affiliation. *See* https://thewillowsrehab.com. Moreover, the Centers for Medicare & Medicaid Services lists CareRite as an affiliated entity of Ramapo Manor on its official Medicare "Care Compare" platform. *See* https://www.medicare.gov/care-compare/details/nursing-home/335148/view-all?state=NY.

64. The operations and management of Ramapo Manor are directly intertwined with those of CareRite and the remaining Facilities. They all perform the same services, and at the behest and control of CareRite.

65. Defendants maintain operational and direct control over the Hourly Employees at the Facilities, including controlling significant functions of the business, determining Hourly Employees' rates of pay, making hiring and firing decisions, supervising and controlling Hourly Employees work schedules and conditions of employment, and maintaining employment records for such Employees. The Facilities share common management, common ownership and financial control, and are interrelated.

66. Accordingly, by virtue of their positions, roles and conduct as described above, Defendants are "employers" of Plaintiffs and the Hourly Employees under the FLSA and NYLL and operate the Facilities as an integrated enterprise.

**Hourly Employees Routinely Work During Uncompensated Meal Breaks**

67. In addition to improperly rounding Hourly Employees' time worked, Defendants

also automatically deduct at least 30 minutes each day from Hourly Employees' compensation for a meal break, despite knowing that Hourly Employees routinely work during all or portions of their uncompensated breaks.

68. Defendants' practice of automatically deducting meal breaks from Hourly Employees' compensation is uniform throughout Defendants' facilities and departments and applies regardless of the Hourly Employee's job title, duties, or responsibilities.

69. Defendants' timekeeping system has the ability to permit Hourly Employees to clock in and out for meal breaks, thus ensuring that Hourly Employees are paid for time spent working during meal breaks. Nonetheless, Defendants deliberately configure their time clocks so as not to permit Hourly Employees to clock out during their meal breaks. Instead, Defendants automatically deduct 30 minutes per shift from each Hourly Employees' pay for a meal break, despite knowing that such employees routinely work during all or portions of their uncompensated meal breaks.

**Defendants Failed to Provide Hourly Employees with Timely and Appropriate Wage Statements and Pay Rate Acknowledgement Forms as Required under NYLL**

70. Defendants failed to provide Plaintiffs and Hourly Employees with accurate wage statements at the time of payment of wages, which were required to contain: the dates of work covered by that payment of wages; names of the employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof; whether paid by the hour, shift, day, week, salary, piece, commission or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL § 195.3. Specifically, the wage statements provided to Plaintiffs were inaccurate and incomplete by failing to include, among other things, the correct rates of pay for all

hours worked by Plaintiffs. As a result, Plaintiffs were prejudiced and harmed in their ability to ascertain whether they were, in fact, being paid for all hours worked, resulting in Plaintiffs and Hourly Employees being undercompensated by Defendants for years.

71. Accordingly, Plaintiffs seek certification of the following classes of Hourly Employees:

> All Hourly Employees who are or were employed by Defendants within the three years (FLSA Collective Class) or six years (New York Class) preceding the filing of this action and were not properly compensated for all work performed while clocked-in; and/or were not compensated for all work performed during uncompensated and automatically deducted meal breaks; and/or were not fully compensated for time worked over forty hours per week at overtime rates; and/or did not receive timely and accurate wage statements and wage notices.

**<u>FAIR LABOR STANDARDS ACT COLLECTIVE ACTION ALLEGATIONS</u>**

72. The preceding paragraphs are incorporated by reference as if fully set forth herein.

73. Plaintiffs bring this FLSA collective action on behalf of themselves and all other persons similarly situated pursuant to 29 U.S.C. §§ 207 and 216(b), specifically, on behalf of the aforementioned FLSA Collective Class.

74. Excluded from the FLSA Collective Class are Defendants, their legal representatives, officers, directors, assigns, and successors, or any individual who has or had a controlling interest in CareRite, Ramapo Manor, or the remaining Facilities. Also excluded are persons and entities who submit timely and otherwise proper requests for exclusion from the FLSA Collective Class.

75. Plaintiffs are unable to state the exact number of Hourly Employees within the Collective Class without discovery of Defendants' books and records but estimate that the FLSA Collective Class exceeds 1,000 individuals.

76. Defendants improperly benefited from Plaintiffs and the FLSA Collective Class members' uncompensated work during schedule-based and time rounding periods and uncompensated meal breaks.

77. Defendants' unlawful conduct has been widespread, repeated, and consistent. Moreover, Defendants' conduct was willful and in bad faith and has caused significant damages to Plaintiffs and the FLSA Collective Class.

78. Defendants are liable under the FLSA for failing to properly compensate Plaintiffs and the FLSA Collective Class, and, as such, notice should be sent to the FLSA Collective Class. There are numerous similarly situated, current and former Hourly Employees who have been denied wages in violation of the FLSA who would benefit from the issuance of a Court-supervised notice of the present lawsuit and the opportunity to join in the action. Those similarly situated Hourly Employees are known to Defendants and are readily identifiable through Defendants' records.

**NEW YORK CLASS ACTION ALLEGATIONS**

79. The preceding paragraphs are incorporated by reference as if fully set forth herein.

80. Plaintiffs bring this action on behalf of themselves and as a class action pursuant to Article 9 of New York Civil Practice Law and Rules on behalf of the aforementioned New York Class.

81. Excluded from the New York Class are Defendants, their legal representatives, officers, directors, assigns, and successors, or any individual who has or had a controlling interest in Ramapo Manor, CareRite Centers, or the remaining Facilities. Also excluded are persons and entities who submit timely and otherwise proper requests for exclusion from the New York Class.

82. Defendants employ over 1,000 Hourly Employees, and they systematically fail and refuse to pay their Hourly Employees for all compensable hours worked. The members of the New York Class are so numerous that joinder of all members in one proceeding is impracticable.

83. Plaintiffs' claims are typical of the claims of other New York Class members because Plaintiffs are/were Hourly Employee who have not been compensated for work performed at their employers' request as a result of Defendants' uniform timekeeping system and during uncompensated meal breaks.

84. Plaintiffs and other New York Class members have sustained similar types of damages as a result of Defendants' failure to comply with the NYLL.

85. Plaintiffs and other New York Class members have been injured in that they have been uncompensated or undercompensated due to Defendants' common policies, practices, and patterns of conduct.

86. Plaintiffs will fairly and adequately protect the interests of the New York Class. Plaintiffs have retained counsel competent and experienced in complex class action and wage and hour litigation. There is no conflict between Plaintiffs and the New York Class.

87. Common questions of law and fact exist as to the New York Class that predominate over any questions solely affecting them individually and include, but are not limited to, the following:

a. Whether Defendants failed and/or refused to pay Plaintiffs and the New York Class for all of the compensable time that they worked for Defendants while clocked-in;

b. Whether Defendants failed and/or refused to pay Plaintiffs for time worked during uncompensated and automatically deducted meal breaks;

c. Whether Defendants failed to keep true and accurate time records for all hours worked by their Hourly Employees as required by New York Labor Law §§ 190 *et seq.* and 650 *et seq.*;

d. Whether Defendants correctly compensated members of the New York Class for hours worked in excess of forty per workweek;

e. Whether Defendants correctly compensated members of the New York Class for all uncompensated straight time hours worked under forty per workweek;

f. Whether Defendants failed to comply with the posting and notice requirements of the NYLL;

g. Whether Defendants engaged in a pattern and/or practice in New York of forcing, coercing, and/or permitting Plaintiffs and New York Class members to perform work for Defendants' benefit which was not compensated;

h. Whether Defendants' policy of failing to pay Hourly Employees was instituted willfully or with reckless disregard of the law; and

i. The nature and extent of class-wide injury and the measure of damages for those injuries.

88. Class action treatment is superior to any alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the duplication of effort and expense that numerous individual actions would entail. Individual class members' damages are inadequate to justify the costs of prosecuting their claims in any manner other than a class action. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no

superior alternative exists for the fair and efficient adjudication of this controversy. Members of the New York Class are readily identifiable from Defendants' own records.

89. Prosecution of separate actions by individual members of the New York Class would create the risk of inconsistent or varying adjudications with respect to individual members of the New York Class that would establish incompatible standards of conduct for Defendants.

90. Without a class action, Defendants will retain the benefit of their wrongdoing and will continue a course of action that will result in further damages to Plaintiff and the New York Class.

91. Plaintiffs intend to send notice to all members of the New York Class to the extent required by New York C.P.L.R. § 904.

## FIRST CAUSE OF ACTION

### VIOLATION OF THE FAIR LABOR STANDARDS ACT
### (On Behalf of Plaintiffs and the FLSA Collective Class)

92. The preceding paragraphs are incorporated by reference as if fully set forth herein.

93. At all relevant times, Defendants have been, and continue to be, "employers" engaged in interstate commerce and/or in the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. § 203.

94. At all relevant times, Defendants have engaged in commerce and their commercial activities generate at least $500,000 a year.

95. At all relevant times, Defendants have employed and continue to employ, Hourly Employees, including Plaintiffs and each of the members of the FLSA Collective Class.

96. Plaintiffs consent in writing to be a part of this action pursuant to FLSA, 29 U.S.C. § 216(b), and attached hereto as Exhibits 1 and 2 are copies of Plaintiffs' Opt-in Consent forms. As this case proceeds, it is likely that other individuals will sign consent forms and join

as Plaintiffs and opt-ins.

97. The FLSA requires each covered employer such as Defendants to compensate all non-exempt Hourly Employees at a rate of not less than one and one-half times the regular rate of pay for work performed in excess of forty hours per workweek.

98. Plaintiffs and the members of the FLSA Collective Action were and are entitled to be paid overtime compensation for all hours worked over forty hours in a workweek.

99. Defendants, pursuant to their policies and practices, failed and refused to pay overtime premiums to Plaintiffs and the members of the FLSA Collective Class for all of their hours worked.

100. By failing to compensate Plaintiffs and the members of the FLSA Collective Class for overtime compensation, Defendants have violated, and continue to violate, the FLSA, 29 U.S.C. § 201, *et seq*.

101. By improperly rounding FLSA Collective time entries, Defendants have violated, and continue to violate Department of Labor Regulation 29 C.F.R. § 785.48(b).

102. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C. § 255(a).

103. Plaintiffs, on behalf of themselves and members of the FLSA Collective Class, seek damages in the amount of their overtime compensation, interest, and such other legal and equitable relief as the Court deems just and proper.

104. Plaintiffs, on behalf of themselves and the FLSA Collective Class, seek recovery of attorneys' fees and costs, to be paid by Defendants, as provided by the FLSA, 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION

**Violations of New York Labor Law –**
**Nonpayment of Minimum Wages and Straight Wages**
**§§ 190 *et seq.* and 650 *et seq.* and 12 NYCRR 142-2.1 and 142-2.2**
**(On Behalf of Plaintiffs and the New York Class)**

105. The preceding paragraphs are incorporated by reference as if the same were fully set forth herein.

106. Pursuant to New York Labor Law §§ 190, 191, 193, 198 and 652, Defendants have willfully failed to pay the minimum wages and straight wages as set forth in the preceding paragraphs of Complaint to Plaintiffs and the New York Class in violation of New York Labor Law §§ 190, 191, 193, 198 and 652 and 12 N.Y.C.R.R. 142-2.1 and 142-2.2.

107. Defendants were not and are not permitted by state or federal law, or by order of a court of competent jurisdiction, to withhold or divert any portion of the Plaintiffs' and the New York Class members' wages that concern this lawsuit.

108. Defendants were not authorized by Plaintiffs or any New York Class members to withhold, divert or deduct any portion of their unpaid wages which are the subject of this lawsuit.

109. Pursuant to New York Labor Law § 198, employers such as Defendants who intentionally fail to pay an Hourly Employee wages in conformance with New York Labor Law shall be liable to the Hourly Employee for the wages or expenses that were intentionally not paid, and court costs and attorneys' fees incurred in recovering the unpaid wages.

110. Defendants have violated the New York Labor Law by failing to pay Plaintiffs and the members of the New York Class for all compensable time and by failing to pay Plaintiffs and the members of the New York Class for the straight time worked at the established rate.

111. Plaintiffs, on behalf of themselves and the New York Class, seek the amount of underpayments based on Defendants' failure to pay straight wages of at least the minimum wage

for all hours worked, as provided by the New York Labor Law, and such other legal and equitable relief as the Court deems just and proper.

112. Plaintiffs, on behalf of themselves and the New York Class, seek all liquidated damages and punitive damages and penalties available under the NYLL.

## THIRD CAUSE OF ACTION

**New York Labor Law – Unpaid Overtime**
**(On Behalf of Plaintiffs and the New York Class)**

113. The preceding paragraphs are incorporated by reference as if the same were fully set forth herein.

114. The overtime wage provisions of Article 19 of the NYLL and its supporting regulations 12 N.Y.C.R.R. 142-2.1 and 142-2.2 apply to Defendants and protect Plaintiffs and the members of the New York Class.

115. Defendants have failed to pay Plaintiffs and members of the New York Class overtime wages to which they are entitled under the NYLL and the supporting New York State Department of Labor Regulations.

116. By Defendants' knowing and/or intentional failure to pay Plaintiffs and the member of the New York Class overtime wages for hours worked in excess of forty hours per week, they have willfully violated NYLL Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

117. Due to Defendants' violations of the NYLL, Plaintiffs and the members of the New York Class are entitled to recover from the Defendants their unpaid overtime wages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

118. Plaintiffs, on behalf of themselves and the New York Class, seek all liquidated and punitive damages and penalties available under the NYLL.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs Noah Doherty and Lynn Leandre, on behalf of themselves and the FLSA Collective, seek the following relief:

A. Designation of this action as a collective action on behalf of the FLSA Collective (asserting FLSA claims) and prompt issuance of notice pursuant to 29 U.S.C. §216(b) to all similarly situated members, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual Opt-in Consent Forms pursuant to 29 U.S.C. § 216(b);

B. Designation of Plaintiffs Noah Doherty and Lynn Leandre as the Representatives of the FLSA Collective Class;

C. Appointment of Plaintiffs' counsel as Lead Counsel for the FLSA Collective Class;

D. An award of damages, according to proof, including but not limited to unpaid overtime wages and lost benefits, to be paid by Defendants;

E. An award of costs incurred herein, including expert fees;

F. An award of attorneys' fees pursuant to 29 U.S.C. § 216;

G. An award of pre-judgment and post judgment interest, as provided by law;

H. An award of injunctive relief to prevent against future wage and hour violations; and

I. All such other relief as this Court shall deem just and proper.

**WHEREFORE**, Plaintiffs Noah Doherty and Lynn Leandre, on behalf of themselves and the New York Class, seek the following relief:

A. Certification of this action as a class action under Rule 23 and the appointment of Plaintiffs' counsel as Class Counsel for the New York Class;

B. Designation of Plaintiffs Noah Doherty and Lynn Leandre as the Representatives of the New York Class;

C. On the Second Cause of Action (Violation of New York Labor Law – Nonpayment of Straight Wages):

1. An award to Plaintiffs and members of the New York Class of damages for the amount of unpaid minimum wage and straight wages in addition to interest subject to proof;

2. An award to Plaintiffs and the members of the New York Class of reasonable attorneys' fees and costs pursuant to New York Labor Law;

D. On the Third Cause of Action (Violation of New York Labor Law – Unpaid Overtime):

1. An award to Plaintiffs and the members of the New York Class of damages for the amount of unpaid overtime, in addition to interest subject to proof; and

2. An award to Plaintiffs and the members of the New York Class of reasonable attorneys' fees and costs pursuant to New York Labor Law.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury of all issues so triable.

**DEMAND TO PRESERVE EVIDENCE**

Defendants are hereby directed to preserve all physical and electronic information pertaining in in any way to Plaintiffs and Plaintiffs' employment, to Plaintiffs' causes of action and/or prayers for relief, and to any defenses to same, including, but not limited to, electronic data storage, closed circuit TV footage, digital images, computer images, cache memory, searchable data, emails, spread sheets, employment files, memos, text messages, any and all online social or

work related websites, entries on social networking sites (including, but not limited to, Facebook, Twitter, Instagram, WhatsApp, etc.), and any other information and/or data and/or things and/or documents which may be relevant to any claim or defense in this litigation.

**NOTICE PURSUANT TO NEW YORK BUSINESS CORPORATIONS LAW § 630**

Defendants are hereby put on notice that pursuant to the provisions of Section 630 of the Business Corporation Law of New York, Plaintiffs, the FLSA Collective Class, and the New York Class intend to charge and hold personally, jointly and severally liable, the ten largest shareholders of Defendants for all debts, wages, and/or salaries due and owing to Defendants' employees for services performed by them and Plaintiffs have expressly authorized the undersigned, as their attorney, to make this demand on their behalf.

Dated: New York, New York
July 2, 2025

McLAUGHLIN & STERN, LLP

By: */s/ Brett R. Gallaway*
Brett Gallaway
Lee Shalov
Jason Giaimo
260 Madison Avenue
New York, NY 10016
Telephone: (212) 448-1100
bgallaway@mclaughlinstern.com
lshalov@mclaughlinstern.com
jgiaimo@mclaughlinstern.com
*Attorneys for Plaintiffs, the FLSA Collective Class and the New York Class*